BbbIN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BLEU COPAS, ) | |
| ) | |
| Plaintiff, ) | Case No.: |
| v. ) | |
| ) | |
| BILL HASLAM, in his official capacity ) | |
| as GOVERNOR OF THE STATE OF ) | |
| TENNESSEEE ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DECLARATORY RELIEF

By and through his counsel of record, and for his Complaint, Plaintiff, Bleu Copas ("Copas"), respectfully alleges that:

## INTRODUCTION

1. This lawsuit challenges the constitutionality of Senate Bill 1556/House Bill 1840 which is now codified at Tennessee Code Annotated Section 63-22-302, and is commonly referred to as the "Therapist Bill" (the "Bill"). The Bill purports to allow Tennessee therapists and counselors to refuse treatment to a patient if the therapist or counselor has a "sincerely held principle" which conflicts with the patient's needs or goals; but, in reality, merely sanctions discrimination against members of the LGBT Community by a select group of counselors due to their religious beliefs.

2. The United States Constitution's Equal Protection Clause and the Establishment Clause prohibit the government-sanctioned discrimination allowed by the Bill. Accordingly, the Court should declare that the Bill is unconstitutional and enjoin its enforcement.

## ALLEGATIONS RELEVANT TO ALL COUNTS

**The parties**

3. Copas is a gay Tennessee citizen. He resides in Anderson County, Tennessee.

4. Copas does not agree with the religious beliefs that the Bill promotes.

5. Like most in the LGBT community, Copas is no stranger to laws that discriminate against him. Indeed, he enjoyed a distinguished career in the Army before being honorably, yet involuntarily, discharged in January of 2006 pursuant to the "Don't Ask, Don't Tell Act".

6. While in the Army, Copas, who speaks Arabic and graduated from the Defense Language Institute in California, worked in military intelligence.

7. Copas did not publicize his sexuality in the military. Nevertheless, a tip from an anonymous accuser led to the Army conducting a formal investigation into his sexuality. As part of this investigation, military investigators interviewed Copas on December 2, 2005. He answered many of their questions, but declined to answer, and requested a lawyer, when asked if he "engaged in homosexual activity or conduct." Ultimately, he accepted the Army's offer of an honorable discharge to avoid being forced to lie about his sexuality, which could have resulted in being charged with perjury.

8. After his discharge, Copas received a Master's degree in Counseling from East Tennessee State University. He now works as a State-certified Peer Recovery Specialist.

9. Copas suffers from Post-Traumatic Stress Disorder ("PTSD") and Chronic Adjustment Disorder ("CAD"). Copas saw a therapist from the date of his discharge until February of 2016, when the therapist changed careers.

10. Copas desires to re-engage in therapy, but fears that a therapist will refuse to treat him because of his sexuality, which is the same reason he was discharged from the Army.

11. Bill Haslam ("Haslam") is the governor of the State of Tennessee. He is sued in his official capacity as the chief executive of the State of Tennessee, who is responsible for ensuring compliance with state law, including the Bill.

12. The State of Tennessee has a history of discriminating against members of the LGBT community. For example, Tennessee Code Annotated Section 39-13-510, which was named the Tennessee Homosexual Acts statute, criminalized private sexual activity between consenting adults of the same sex from its enactment in 1989 until January 26, 1996. Also in 1996, Tennessee enacted a statutory ban on same-sex marriages, which was followed by a 2004 amendment to the Tennessee Constitution that banned same-sex marriages.

**Jurisdiction and venue**

13. Jurisdiction is proper under 28 U.S.C. Section 1331 as this is a civil action that challenges the constitutionality of a law enacted by the State of Tennessee.

14. Venue is proper under 28 U.S.C. Section 1391(b) because Defendants are situated within this judicial district.

**The Bill is intended to "protect" certain Christian counselors and therapists from violating their religious beliefs by allowing them to discriminate against the LGBT community.**

15. On May 2, 2016, Governor Haslam signed the Bill into law.

16. This Bill allows counselors and therapists to discriminate against patients by empowering them to refuse to "counsel or serve a client as to goals, outcomes, or behaviors that conflict with the sincerely held principles of the counselor or therapist. . . ."

17. The Bill is part of a widespread reaction to the national focus on same-sex marriage and transgender rights, and was initially conceived as an effort to "protect" religious counselors in the wake of the legalization of gay marriage.

18. Early versions of the Bill referred to the "sincerely held religious belief of the counselor or therapist." The final version of the Bill (which became law) substituted the term "sincerely held principles" for "sincerely held religious belief."

19. A counselor's sincerely held principles are inextricably intertwined with a counselor's sincerely held religious beliefs.

**The Bill's proponents were limited to certain religious groups who oppose same-sex marriage, and believe the LGBT community is not entitled to equal rights.**

20. A review of the Bill's proponents supports the conclusion that the Bill was designed to "protect" the religious beliefs of certain counselors and therapists rather than the sincerely held principles of all counselors and therapists.

21. Psychologist James T. Berry, who testified in support of the bill, told the Tennessean that he is happy to treat gay people suffering from depression or mental ailments, but providing sex therapy to unmarried or same-sex couples would violate his religious beliefs.

22. The Family Action Council of Tennessee ("FACT") and the Alliance Defending Freedom (the "ADF") promoted the Bill.

23. The Southern Poverty Law Center first designated FACT as an anti-LGBT hate group in 2010.

24. In an August 25, 2011, blog post, FACT's current president, David Fowler, decried the American Psychiatry Association's decision to remove homosexuality from its list of mental disorders. Similarly, Fowler called transgender students "abnormal" when testifying in favor of an anti-transgender bathroom bill that was pending before Tennessee's legislature.

25. On April 27, 2016, FACT tweeted "[T]hank you, @BillHaslam, for signing into law Senate Bill 1556/House Bill 1840 that protects religious liberty of counseling students!"

26. The ADF is a nonprofit organization that supports national "religious freedom laws" and so-called "bathroom bills" which target transgender students.

27. The ADF's past acts include labeling the crime which led to Matthew Shephard's murder a hoax to promote the gay agenda.

28. On July 22, 2016, the ADF released a statement by attorney Jeremy Tedesco that stated "[N]o one – not Jack or anyone else – should be forced by the government to further a message that they cannot in good conscience promote" when discussing Masterpiece Cakeshop owner Jack Phillip's decision to ask the United Stated States Supreme Court to hear his case after a lower court ruled that Mr. Phillips' religious beliefs did not justify his refusal to make a wedding cake for a same-sex couple.

29. No proponent of the Bill or legislature has identified a "sincerely held principle" – other than a counselor's religious belief – that the Bill seeks to protect.

**The unintended consequences of substituting "sincerely held beliefs" for "religious beliefs" demonstrates that the Bill is designed to discriminate against members of the LGBT community.**

30. The Bill's authors intended for the Bill to empower certain people to discriminate against members of the LGBT community. In an attempt to camouflage their intent, the authors' drafted a bill that allows for all types of discrimination. For example, a plain reading of the Bill reveals that it allows for, without limitation:

   a. a counselor to refuse marital counseling to a mixed-race couple, if doing so would violate the counselor's sincerely held principle that African-Americans and Caucasians should not be allowed to marry;

   b. a counselor to refuse his services to a pregnant teenager who was subjected to a brutal rape and is now struggling with the decision of whether to carry her baby to term, if doing so would violate the counselor's sincerely held principles in opposition of abortion;

c. a counselor to refuse treating a former soldier who sustained post-traumatic stress disorder after a road side bombing in Afghanistan, if doing so would violate the counselor's sincerely held principle that war is wrong and that those who participate in it are no better than those who order it; and

d. a counselor to refuse therapy to an African-American woman who is denied entry to a restaurant because of the color of her skin, if doing so would violate the counselor's sincerely held belief that Blacks and Whites should not eat together.

31. The Tennessee Legislature neither intended for the Bill to protect the "sincerely held principles" described in the preceding paragraph nor to legalize the acts of discrimination described in the preceding paragraph.

32. The Tennessee Legislature intended for the Bill solely to allow religious counselors to discriminate against the LGBT community.

**The American Counseling Association (the "ACA") believes that the bill unfairly discriminates against the LGBT community.**

33. The Bill directly violates the ACA's Code of Ethics Section C.5 ("Section C.5"), which prohibits counselors from "engag[ing] in discrimination against prospective or current clients . . . based on gender, gender identity, sexual orientation, [and] marital/partnership status."

34. The ACA opposed the Bill, referred to it as "Hate Bill 1840," and called it an "unprecedented attack" on the counseling profession. Additionally, the ACA canceled its planned 2017 national convention in Nashville, Tennessee, in protest of the Bill's passage.

35. The Bill requires a Tennessee public university to confer a degree upon, and the State of Tennessee to license, a counselor who refuses to abide by Section C.5, but provides no protections to a potential counselor who refuses to abide by any other section in the ACA's Code of Ethics.

### Haslam's statements after signing the Bill show that the Bill's purpose is to allow certain religious counselors to discriminate against homosexuals.

36. Haslam was aware of Section C.5 when he signed the Bill. After signing the Bill, Haslam stated:

> First, the bill clearly states that it "shall not apply to a counselor or therapist when an individual seeking or undergoing counseling is in imminent danger of harming themselves or others." Secondly, the bill requires that any counselor or therapist who feels they cannot serve a client due to the counselor's sincerely held principles must coordinate a referral of the client to another counselor or therapist who will provide the counseling or therapy.

37. Haslam's statement referenced in the preceding paragraph makes no mention of:

   a. how a counselor who is willing to reject a patient because of the counselor or therapist's sincerely held principles will determine if the individual seeking help is in imminent danger of harming themselves;

   b. the effect the law has on individuals seeking or undergoing counseling who are in an imminent danger of harming themselves but are discouraged from seeking help, either because a past counselor rejected them because of sincerely held principles or a newly-sought counselor could reject them because of sincerely held principles; and

   c. whether in certain rural areas, there will be an alternate counselor to whom the individual seeking need can reasonably be referred.

38. When asked if therapists and counselors have an obligation to serve everyone, Haslam replied "[L]awyers don't serve everyone . . . Lawyers right now can say, 'I'm not the person to help you on that issue; I don't agree with what you're trying to do'; and they can turn down that person and they can go somewhere else."

39. At the time Haslam made the statement referenced in the preceding paragraph, the Rules of Professional Conduct governing attorneys contained no equivalent to Section C.5 of the ACA's Code of Ethics. However, the preamble of the Rules of Professional Conduct which apply to Tennessee lawyers are consistent with that Section, as it provides, in relevant part, that "all lawyers should devote professional time and resources and use civic influence to ensure

equal access to our system of justice for those who because of economic or social barriers cannot afford or secure adequate legal counsel."

40. In December of 2016, the American Bar Association amended Model Rule of Professional Conduct 8.4 to prohibit conduct:

> . . . the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law.

Model Rules of Prof'l Conduct R. 8.4(g).

**<u>The Bill caused harm to Copas and other members of the LGBT community.</u>**

41. The Bill's passage injured Copas and other members of the LGBT Community.

42. Part of the injuries Copas and other members of the LGBT Community suffered is stigmatic – their state looked at a select group of religious counselors who oppose LBGT people and determined that those counselors may discriminate, and that Copas and other members of the LGBT community are not worthy of being guaranteed counseling services.

43. Copas also faces an actual and imminent threat of discrimination.

44. Prior to the Bill's passage, due to the ACA's Code of Ethics, Copas and other LGBT persons knew that if they required treatment, though a counselor might not approve of their lifestyle, and might state that another counselor might be better suited to their needs, the counselor would not refuse service solely because of their sexuality.

45. Now that the Bill has passed, unlike all other Tennesseans, Copas and other LGBT persons no longer know that a counselor will not discriminate against them.

46. As the Bill does not require counselors to publicly disclose whether they treat patients who seek outcomes that conflict with their sincerely held principles (i.e. whether the counselor refuses to treat members of the LGBT Community because of the counselor's sincere

religious belief), neither Copas, who suffers from PTSD and CAD, nor any other LGBT person in Tennessee has the security of knowing that, after summoning the courage to seek treatment and make an appointment with a counselor, the counselor will actually provide the necessary treatment.

47. Copas is further injured by the Bill's passage in that he and other LGBT persons are unable to take advantage of the statutory exemption for couples who complete a qualifying premarital preparation course from the $60.00 fee included in the cost of a marriage license.

48. Tenn. Code Ann. § 36-6-413(5) provides, in relevant part:

(A) A man and a woman who, together or separately, complete a premarital preparation course in compliance with this section shall be exempt from the sixty dollar ($60.00) fee otherwise imposed by this section. Such course shall be not less than four (4) hours each, and shall be completed no more than one (1) year prior to the date of application for a marriage license. Each individual shall verify completion of the course by filing with the application a valid certificate of completion from the course provider, on a form developed by the administrative office of the courts, which certificate shall comply with the requirements of this subdivision (b)(5).

. . .

(C) All individuals who participate in a premarital preparation course shall choose from the following list of qualified instructors:

    (i) A psychologist as defined under § 63-11-203;

    (ii) A clinical social worker as defined in title 63, chapter 23;

    (iii) A licensed marital and family therapist as defined in § 63-22-115;

    (iv) A clinical pastoral therapist as defined in title 63, chapter 22, part 2;

    (v) A professional counselor as defined in § 63-22-104;

    (vi) A psychological examiner as defined in § 63-11-202;

    (vii) An official representative of a religious institution that is recognized under § 63-22-204; or

> (viii) Any other instructor who meets the qualifying guidelines that may be established by the judicial district for the county in which the marriage license is issued.

Tenn. Code Ann. § 36-6-413.

49. In short, the statute provides that couples who complete a premarital counseling course with a psychologist, therapist, or other specified counselor do not have to pay the additional $60.00 fee when obtaining a marriage license.

50. Copas and other LGBT persons who cannot find a counselor willing to provide them with premarital counseling services would therefore be required to pay more for a marriage license than a non-LGBT couple under the same circumstances.

## **COUNT I – VIOLATION OF THE EQUAL PROTECTION CLAUSE**

51. Copas incorporates the allegations contained in paragraphs 1 through 50.

52. There is no question that the Bill targets LGBT people and that Tennessee's Legislature intended for it to allow persons of certain religious beliefs to rely on those beliefs to discriminate against LGBT people.

53. The Bill specially protects certain counselors who hold certain religious beliefs and disfavors all others.

54. There is no rational basis for allowing a select group of religious counselors to discriminate against LGBT people.

55. The Bill violates the Equal Protection Clause of the Fourteenth Amendment, which mandates that a state may neither "deprive any person of life, liberty, or property, without due process of the law; nor deny any person within its jurisdiction equal protection of the laws."

56. Arbitrary discrimination on the basis of sexual orientation violates the Equal Protection Clause.

57. Unless the Court declares the Bill to be unconstitutional, Copas and other members of the LGBT community will continue to suffer harm.

## COUNT II – VIOLATION OF THE ESTABLISHMENT CLAUSE

58. Copas incorporates the allegations contained in paragraphs one through 57.

59. The First Amendment's Establishment Clause prohibits governments from establishing or protecting only one religion, or enacting any "law respecting an establishment of religion." U.S. Const. Amend. I.

60. In an Establishment Clause challenge, "the context in which the statute was enacted and the reasons for its passage" must be considered. *Salazar v. Buono*, 559 U.S. 700, 715 (2010).

61. The legislative intent of the State of Tennessee was to legalize discrimination against LGBT people as early versions of the Bill referred to the "sincerely held religious belief of the counselor or therapist."

62. The Bill, evidenced by its proponents and legislative history, conveys the State of Tennessee's approval of counselors who hold certain religious beliefs at the expense of LGBT people and sends a message that the state government is unwilling to protect them.

63. Many religious people, including counselors, do not believe that their religious beliefs preclude them from providing services to LGBT persons, and that LGBT people deserve the same treatment as non-LGBT people.

64. The Bill unlawfully favors those counselors with religious beliefs that are unaccepting of LGBT people over the religious beliefs of those that accept LGBT people.

65. Copas, a United States Army veteran with PTSD and CAD has been injured by the unjust and unequal treatment prescribed by the Bill. Unlike non-LGBT Tennessee citizens,

Copas and other LGBT people have no guarantee that a licensed counselor will accept them as patients.

66. The Bill violates the Establishment Clause. Pursuant to its legislative history, it is clear that the Bill's purpose is the endorsement and advancement of a religious belief – disagreement with LGBT people. By requiring that religious accommodation be granted even when it impermissibly burden innocent third parties, the Bill impermissibly advances the particular (and far from universal) religious disapproval of LGBT people.

## COUNT III – DECLARATORY AND INJUNCTIVE RELIE

67. Copas incorporates the allegations contained in paragraphs one through 67.

68. The Court should declare that the Therapist Bill is unconstitutional and enjoin Defendant from enforcing it.

69. Ruling that the Therapist Bill is un-Constitutional will not burden The State of Tennessee. On the other hand, Copas and other LGBT individuals will continue to have their Constitutional rights violated if the Therapist Bill remains in effect.

70. Legal damages cannot make Copas whole for the State of Tennessee's un-Constitutional enacting of the Therapist Bill.

WHEREFORE, Plaintiff, Bleu Copas, respectfully requests that this Court:

1. declare that Tennessee Code Annotated Section 63-22-302 is un-Constitutional;

2. enjoin Defendants from enforcing Section 63-22-302,

3. award him the reasonable costs and attorneys' fees he has incurred pursuant to 42 U.S.C. Section 1988; and

4. grant any other relief that it deems just and proper.

Respectfully submitted,

*s/ Keith Edmiston* _____
Keith Edmiston
P.O. Box 30782
Knoxville, TN 37930
(865) 383-0357
Keith.edmiston@edmistonfoster.com

Christopher W. Cardwell
Mary Taylor Gallagher
Sarah Locker
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
150 Third Avenue South, Suite 1700
Nashville, TN 37201
(615) 244-4994 (Telephone)
(615) 256-6339 (Facsimile)
ccardwell@gsrm.com
mtgallagher@gsrm.com
slocker@gsrm.com

*Attorneys for Plaintiff*