**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| BLEU COPAS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17-CV-1447 |
| | ) | |
| | ) | |
| BILL HASLAM, in his official capacity as | ) | |
| GOVERNOR OF THE STATE OF TENNESSEE, | ) | |
|     Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Plaintiff brings this suit challenging the constitutionality of Tenn. Code Ann. § 63-22-302, commonly referred to as the "Therapist Bill," on the grounds that the statute violates the Establishment Clause of the United States Constitution. (Complaint, ECF 2, ¶ 1,2).[1] Plaintiff's theory of the case is based on his own perception, which happens to be a *misperception*, of the reasons for the Therapist Bill. Based on various outside sources such as blogs and news reports, Plaintiff is under the misapprehension that the State of Tennessee passed this legislation for the purpose of allowing religious counselors to discriminate against the LGBT community. However, the legislative history shows that the legislators and Governor Haslam passed this legislation with the primary intent to help patients, not to discriminate. All the testimony from the various counselors, including the recent deposition of Dr. James Berry, a faith-based counselor, demonstrates that all

---

[1] Plaintiff initially claimed that the Therapist Bill violates the Equal Protection Clause, but this Court dismissed that claim. [See, Memorandum and Order, ECF 21].

1

counselors, including faith-based counselors, *do not* discriminate against LGBT persons.

Further, in his Complaint, Plaintiff insists that there are no "sincerely held beliefs" that are not religious. However, Plaintiff admitted in his deposition that there are sincerely held beliefs that are not rooted in religion. Dr. James Berry, a faith-based counselor, testified as to several sincerely held beliefs that are not based on religion. [Dale Berry Deposition, pgs. 21-24].

This Complaint is thus due to be dismissed because Plaintiff cannot establish standing to sue and because the Therapist Bill does not violate the Establishment Clause.

## STATEMENT OF UNDISPUTED FACTS

### I. The Legislative History of the Bill.

Senator Johnson first raised the Therapist Bill before the Tennessee Senate in January 2016. Senator Johnson indicated that there was a need for the bill because of a 2014 change to part A.11.b in the American Counseling Association's (ACA) Code of Ethics. In 2014, A.11.b. of the ACA Code was changed to specifically ban counselors from referring patients based solely on the counselor's personally held values and beliefs. This was a departure from the ACA Code as it had existed for many years.[2]

Senator Johnson was unaware of the reason for the change.

On the House side, the sponsor was Representative Howell.

The Therapist Bill was in debate over a course of several months. During that time, Senator Johnson and Representative Howell, as well as concerned citizens, advanced several reasons why the Therapist Bill was needed.

Senator Johnson advocated the bill because: (1) a therapist would not be qualified or

---

[2] Tennessee adopted the 2014 ACA Code of Ethics in March 2016.

2

competent to provide needed therapy if the goal of the therapy conflicted with the therapist's sincerely held principles; and (2) there is a fear that individuals may target a therapist and seek discipline or even sue claiming that any referrals were based on sincerely held principles, when in actuality the referral was made on the basis of feelings of a lack of competency or some other allowed reason. Senator Johnson pointed out that the primary goal of the Therapist Bill was to make sure that people get the treatment they need from counselors qualified to provide it. One goal of the Therapist Bill is to make sure that patients get referrals – there is no intent to shut anyone out. Senator Johnson also pointed out that the Therapist Bill will just be a return to the ACA Code of Ethics as it existed prior to 2014. Senator Johnson worked with the Department of Mental Health to draft a bill that was acceptable to the Department.

Representative Howell also believed that the Therapist Bill simply returned the Code of Ethics back to what it was prior to 2014. It was Representative Howell's opinion that the Therapist Bill does protect the client – the counselor still has a duty to refer. Representative Howell's reasons for sponsoring the Therapist Bill were: (1) There may be a conflict between a counselor's deeply held beliefs and the goals of a patient, for example the patient may be seeking counseling about assisted suicide. The therapist might not be the best fit because assisted suicide is contrary to the therapist's deeply held beliefs. The Therapist Bill is about matching up the patient and their goals with a counselor who is in a better position to provide support and assistance; (2) The new ACA Code inhibits the free exercise of religion. The Therapist Bill is an effort to reconcile religious liberty concerns of licensed counselors and practitioners with a need to ensure that a person who needs counseling does in fact get counseling; (3) The new ACA Code violates Title VII of the Civil Rights Act because it discriminates against religious liberty; (4) The Therapist Bill seeks to protect

the needs of the client balanced with the First Amendment free speech and freedom of religion rights of the counselor; and (5) It is impossible to have value-free counseling. The only way to prevent imposing values on a client is to refer, which is what the Therapist Bill does.

Representative Howell stressed that the Therapist Bill only seeks to change one part of the ACA Ethics Code; the rest of the Ethics Code will remain in place, including the no-discrimination clause and any refusal to make a proper referral. Representative Howell indicated that he was attempting to prevent disciplinary actions against counselors who refer patients whose goals conflict with the counselor's beliefs. Representative Howell pointed out that, under the previous Code of Ethics, there had been no disciplinary actions taken against counselors. So, things had been working well under the old system.

Senator Hensley pointed out that medical doctors are allowed to refer patients if the provider believes that a patient's lifestyle, such as smoking, is harmful. It was Senator Hensley's opinion that if the therapist believes that they do not think they can help, they should be able to refer. Senator Green, a physician, pointed out that, based on science as well as his religion, he believes that life begins at conception, so he does not feel comfortable prescribing the morning-after pill. Dr. Green, will, however, refers patients who want this particular treatment. Dr. Green believes that therapists should be able to do the same.

Various senators and representatives believed that the Therapist Bill provides a good balance between protecting the patient and protecting the therapist's religious beliefs.

Dr. Graham, a licensed professional counselor, testified that the Therapist Bill protects his rights to honor his core beliefs while at the same time providing the most appropriate therapist for the goals of the patient. Dr. Graham pointed out that, until 2014, the ACA allowed, and even

4

encouraged, the therapist to refer when the therapist did not feel competent to work with the goal of the patient. The issue is not the person – it is the goal of the patient. Dr. Graham works with all manner of people. According to Dr. Graham, it is very difficult for a therapist to separate out core values when providing treatment – no matter how hard they try, the therapist is likely to convey at least a subtle message that reflects their values. Dr. Graham testified that patients are the highest priority and the best thing for a patient is to refer the patient to someone who shares the same belief systems and would be in a better position to care for the patient.

Representative Howell read a letter from Dr. James Dalton, a professor of counseling at Freed-Hardeman University. According to Dr. Dalton, there are times when the best way to assist a patient is to refer the patient to a counselor whose values are more neutral or in line with the patient's values regarding their reasons for seeking treatment.

Dr. David Fowler, president of the Family Action Council Tennessee (FACT), read excerpts from writings of Eugene Volokh, a professor of First Amendment constitutional law. According to Mr. Volokh, Title VII requires public and private employers to exempt employees from generally-applicable work if that work violated their religious freedom. Dr. Fowler testified that there maybe lawsuits if the therapists are not properly accommodated.

Dr. James Berry, a licensed psychologist with a faith-based counseling center in Knoxville, testified that all counselors value every human being; there is no discrimination. According to Dr. Berry, the issue is not the *person*, it is the *goal* of the therapy – what they are trying to accomplish – that is the issue. Dr. Berry gave an example of an unmarried couple who seeks sex therapy from him; Dr. Berry does not believe in extramarital sex, so he would not feel comfortable providing that therapy. Dr. Berry does not have anything against the couple; it's just that they are asking him to do

5

something he cannot do. A referral would be in the best interests of both the couple and the therapist. Dr. Berry mentioned research that shows that therapists cannot hide their values. Dr. Berry would want to refer to avoid imposing his values on the patients.

Dr. Berry further pointed out that the old ACA Code stated that if counselors determine that they are unable to assist patients, then the counselor avoids entering or continuing the counseling relationship. But the new Code is completely different; it has teeth – counselors can be disciplined if they violate the Code. Dr. Berry feared that there could be a political activist who disagrees with his practice and practice group and who could report Dr. Berry's practice group to the Board if there is any referral, even if the referral was for reasons other than values.

Other counselors testified similar to Dr. Berry. All agreed that there is no discrimination against the patient; the issue is the goal of therapy and whether the goal conflicts with a deeply held principle.

Representative DeBerry stated that he believes that the Therapist Bill is appropriate because otherwise the State is forcing some people to believe certain things, and people should be free in their beliefs and not be forced to make a choice.

At no point did anyone say anything about denying anyone therapy or trying to impede therapy. All the therapists who testified stated that they do not discriminate against the person, but they do not feel capable of properly treating people whose goals of therapy conflict with their values.

**II. Governor Haslam's Specific Communications.**

Governor Haslam's press release about the Therapist Bill is telling. In his statement, Governor Haslam pointed out that there were two key provisions which alleviated his fears about the Bill: (1) that it does not apply when the patient is in imminent danger of harming himself or others;

6

and (2) the requirement that the therapist coordinate a referral. Governor Haslam pointed out that the substance of the bill did not apply to any one group, issue or belief system. It just allows counselors to refer if the goals of therapy conflict with sincerely held principles, just like other professionals such as doctors and lawyers.

Dr. Berry wrote a letter to Governor Haslam in support of the Therapist Bill. In his letter, Dr. Berry made statements consistent with his testimony. Dr. Berry also pointed out that all counselors, not just faith-based counselors should be supportive because non-religious counselors have core values that they cannot fake.

### III. Plaintiff's History.

#### A. Plaintiff Has Not Made a True Effort to Find a Therapist.

Plaintiff Bleu Copas is a Tennessee resident who lives in Powell, Tennessee with his husband Ricky Shaw. Plaintiff married Mr. Shaw on July 4, 2015, soon after the Supreme Court decision in the *Tanco v. Haslam* matter.

Plaintiff has a master's degree in counseling that he received after his Army discharge. He is now a peer recovery specialist. In that role, Plaintiff mentors and conducts group and one-on-one sessions. Plaintiff is working toward his professional therapist license.

Plaintiff has known that he was attracted to boys and men since he was about 8 years old. Plaintiff has always felt that he was "different," and for that reason he has spent his entire life in hiding, "I spend probably every moment of my life imagining that at any point I will be discriminated against because I am gay."

With regard to seeking therapy, Plaintiff admits that he has always been reticent. In fact, for any therapist he has had in his life, Plaintiff has had a fear of being discriminated against. Plaintiff

7

also fears seeking therapy because there is a "stigma" attached to mental illness. In addition, Plaintiff has not sought therapy after his previous therapist, Dan Williams, left to go to another place in February 2016, because Plaintiff does not want to do the hard work that it takes to initiate a new relationship, such as dredging up memories and educating the therapist on his issues. Plus, Plaintiff has internalized homophobia that he has dealt with his entire life. This internalized homophobia causes Plaintiff to think that everyone else feels the same way – that others will discriminate because they, also, are homophobic.

Yet another problem that Plaintiff has listed is that he is not confident in the program that the VA provides to send veterans, like himself, to outside vendors because it is not working well and there have been many complaints.

Plaintiff does not know of anyone who has been refused treatment or referred because of a sincerely held belief.

There are options available to Plaintiff. He could have obtained referrals from his trusted therapists and psychiatrists. Plaintiff could have spoken to his friends and gotten referrals from them. There are websites on which therapists specifically state that they will treat gay patients in the areas where Plaintiff lives and works. In fact, the Tennessee Equality Project, an organization formed specifically for protection of gay people, and of which Plaintiff is and has been for years a participant, has a website that specifically asks for counselors to sign up and agree that they will not turn anyone away even if the patient's goals conflict with their sincerely held beliefs. But Plaintiff has not used any of these resources.

8

### B.        Plaintiff Has no Proof of a First Amendment Violation.

Plaintiff did not go to any of the legislative hearings and has not read the hearing transcripts. Plaintiff did not testify at the hearings; he did not ask to testify at any of the hearings; and he has not read the letters from the proponents of the legislation.  Plaintiff does not know whether any of the promoters of the legislation discussed any homophobic or anti-homosexual beliefs with lobbyists or other legislators.  Plaintiff is relying solely on what others have said about the legislation – news reports, blogs, etc.

Plaintiff's sole support for his allegations that the Therapist Statute promotes religious beliefs; that it was targeted at LGBT; that it was intended to discriminate against LGBT; that the legislation was intended solely to allow religious counselors to discriminate against LGBT community, is Plaintiff's perception.

Plaintiff agrees that it is best for someone to receive treatment from a therapist who is sympathetic to the goals of the therapy.  Plaintiff also agrees that people can have sincerely held principles that are not related to religion.

### STANDARD OF REVIEW

The standard of review for a Motion for Summary Judgment is familiar.  Summary Judgment is appropriate if there is "no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56.  After sufficient time for discovery and upon motion, Fed. R. Civ. Proc. 56 mandates summary judgment against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will

9

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When the movant has satisfied his burden, "the non-moving party cannot rest on pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009)(citing to *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)). In order to survive summary judgment, the non-moving party "must do more than simply show there is some metaphysical doubt as to the material facts," in other words, "a mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party." *Anderson*, 477 U.S. at 252.

Here, there are no genuine issues of material fact and Defendant is entitled to judgment as a matter of law.

## ARGUMENT

Plaintiff cannot prove an Establishment Clause violation. Moreover, Plaintiff cannot prove that he has standing to sue.

## I. The Therapist Bill is Facially Neutral and Does not Violate the Establishment Clause.

"The defining principle of Establishment Clause jurisprudence is that the 'First Amendment mandates government neutrality between religion and religion, and between religion and nonreligion.'" *ACLU of Kentucky v. Grayson County, Ky.*, 591 F.3d 837, 844 (6th Cir. 2010) (citing *McCreary County v. ACLU*, 545 U.S. 844, 860 (2005)).

To decide whether a statute violates the Establishment Clause, courts look to a modified version of the *Lemon v. Kurtzman* test. *Smith v. Jefferson County Board of School Commissioners*,

788 F.3d 580, 588 (6th Cir. 2015); *Granzeir v. Middleton*, 173 F.3d 568, 572-73 (6th Cir. 1999). To survive constitutionality, the statute must meet three prongs: (1) It must have a secular purpose; (2) Its primary effect must be one that neither advances nor inhibits religion. For this prong, the government must show that a reasonable observer would not consider the statute to be an endorsement of religion; and (3) The statute must not foster an excessive entanglement with religion. *Id.*[3] Each prong is analyzed in turn below.

### A.    The Therapist Statute Has a Secular Purpose.

To determine whether this prong has been satisfied, the courts inquire as to whether the actual purpose is to approve or disapprove of religion. *Chaudhuri v. State*, 130 F.3d 232, 236 (6th Cir. 1997) (citing *Edwards v. Aguillard*, 482 U.S. 578, 585 (1987). The government's purpose does not have to be exclusively secular because "a focus on exclusively on the religious component of any activity would inevitably lead to its invalidation." *Chaudhuri*, 130 F.3d at 236 (citing to *Lynch v. Donnely*, 465 U.S. 668, 680-81 (1984)). "There is room to play in the joints between" the Free Exercise and Establishment Clauses. *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Further, "unless it appears to be a sham, the government's assertion of a legitimate secular purpose is entitled to deference." *Chaudhuri*, 130 F.3d at 236 (citing *Edwards*, 482 U.S. at 585). *See also Granzeir*, 173 F.3d at 574.

Here, there is ample evidence of a secular purpose. The Therapist Bill serves the state's interest in governance of the counselors and their practice within Tennessee. *See* Tenn. Code Ann. §§ 63-22-101 to 63-22-301. As with other professions, professional counselors shall comply with an

---

[3] In some cases, there is also another consideration – if history shows that the specific practice is permitted, then "it is not necessary to define the precise boundary of the Establishment Clause." The Court must acknowledge that the practice was accepted by the Framers and has withstood the test of time. *Smith*, 788 F.3d at 587. Here, there is no historical

ethical code. *See e.g.*, Tenn. Comp. R. & Regs. 0450-01-.13 (professional counselors), Tenn. Comp. R. & Regs. 0880-02-.14 (physicians), Tenn. R. S. Ct. Rule 8 (attorneys). For professional counselors, the board adopted the code of ethics adopted by the American Counseling Association ("ACA") unless it conflicts with state law. Tenn. Comp. R. & Regs. 0450-01-.13. When the ACA adopted a new provision in the code in 2014, the legislators later decided they did not want that particular provision to govern counselors practicing in Tennessee . [Hearing Transcript, pg. 2-5.]

The Therapist Bill also aimed to protect patients within Tennessee. All supporters of the Therapist Bill were concerned about the negative impact that a therapist with conflicting values could have on a patient. [Hearing Transcript, pgs. 2-6, 14-15, 73-78, 80, 82-83, 87, 89, 95, 156-157, 261-263, 272-273, 268-270, 264-266]. The concern was that a therapist could never "shelve" or hide core values, and thus the therapy could be confusing and harmful to the client. [Id]. All the therapists who testified pointed out that it is not the *person* who is at issue – therapists treat all kinds of people – instead, it is the *goal* of the therapy and whether the *goal* conflicts with a core value. Treating people for depression, personality conflicts, that kind of thing, would not be affected. It would be where the patient wants something like sex therapy for an unmarried couple which would be the issue. [Hearing Transcript, 270-271].

In addition, the Therapist Bill sought to protect counselors from unwarranted litigation that could arise due to the change in the ACA Code. There was a real fear that people would target certain therapists and claim that referrals were due solely because of sincerely held principles, when in fact the referral was made based on feelings of a lack of competency or some other reason. [Hearing Transcript, pgs. 2-6, 14-15]. When asked how he would respond if someone were to accuse

---

evidence regarding therapists and whether they can refer.

him of unethical conduct, Plaintiff agreed that he would be nervous and would have to defend himself. [Bleu Copas Deposition, pgs. 100].

Moreover, there was a fear that the new ACA Code violated Title VII of the Civil Rights Act by discriminating against religious liberty. There was a concern that this could lead to lawsuits for violations of civil rights of the counselor. [Hearing Transcript, pgs. 153-154, 160, 164-165, 243-244]. This concern was not unfounded – there was a very public and recent similar lawsuit based on whether portions of the Affordable Care Act violated the Religious Freedom Restoration Act. *See Burwell v. Hobby Lobby*, 573 U.S. 682 (2014).[4]

All of these stated secular purposes—governance of counselors, protection of patients, avoidance of subsequent lawsuits arising from the new ACA Code—are entitled to deference.

Further, admittedly, a part of the purpose behind the Therapist Bill was to balance therapists' Free Exercise of religion and Free Speech with the patients' rights to quality therapy. [Hearing Transcript, pgs. 146, 153-154, 156-157, 160-161, 164-165]. But only a part—the legislators recognized that therapists who are not religious also have core values, hence the change from "sincere religious principles" to "sincerely held principles."[5] Because a purpose does not have to be exclusively secular, this fact does not violate the Establishment Clause. *See Chaudhuri,* 130 F.3d at 236. And it is well settled that a proper governmental purpose can be to accommodate the Free Exercise of religion without running afoul of the Establishment Clause. *Cutter,* 544 U.S. at 711*; Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144-45 (1987); *Corporation of Presiding Bishop of Church of Latter Day Saints v. Amos*, 483 U.S. 327, 334-335 (1987) ("[T]here is

---

[4] Admittedly the Restoration Freedom Religious Act only apples to the Federal Government. This case is just cited as an example.

[5] Even Plaintiff acknowledges that non-religious persons have core values. [Copas Deposition, pg.].

13

ample room under the Establishment Clause for benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference … it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions.").

Here, one of the things that the legislators tried to accomplish was a fair balance between free exercise of religion and free speech and the rights and needs of patients. [Hearing Transcript, pgs. 146, 153-154, 160-161, 164-165, 229-234]. Representative Howell, one of the sponsors, pointed out that the only part of the ACA Code of Ethics that is affected is the one about referrals. All other aspects of the ACA Code remain intact, including the no-discrimination clause. [Hearing Transcript, pgs. 233-234, 337, 340-341]. Also, throughout the hearings, it was evident that the main focus was on the health and well-being of the patients. The legislative history makes it clear that the purpose was not to accommodate religion at the expense of patients. The facts that (1) there is a requirement of a referral and (2) that no referral is allowed if the patient is at risk of serious harm demonstrate that the legislative purpose was to protect the patient while acknowledging the therapist's core values. The Therapist Bill is thus one of those instances where there is proper "play in the joints between" the Free Exercise and Establishment Clauses. *See, Cutter, supra.*

The Sixth Circuit weighed in on this issue in *Ward v. Polite*, 667 F.3d 717 (6th Cir. 2012). In *Ward*, the plaintiff, a counseling student with strong faith-based values, asked to refer a same-sex couple if the couple desired therapy which would require her to affirm the same-sex relationship. *Ward*, 667 F.3d at 731. The plaintiff indicated that she did not discriminate – she had no problem counseling gay and lesbian clients, as long as the university did not require her to affirm their sexual orientation. *Id.* at 732. The university expelled her from the program. *Id.* at 731-32.

14

Ms. Ward filed suit alleging violation of her Free Exercise and Free Speech rights. The Court pointed out that the ACA Code of Ethics did not contain a no-referral clause.6 *Id.* at 735. The ACA Code did, however, (and still does) require that counselors be aware of their own values and avoid imposing them on their clients. *Id.*; ACA Code of Ethics, A.4.b. The Court pointed out that "The point of the referral was to *avoid* imposing her values on gay and lesbian clients." *Id.* (emphasis in original). The Court further pointed out that "[T]olerance is a two-way street. Otherwise, the rule mandates orthodoxy, not anti-discrimination." *Id.*

Here, the therapists who testified in favor of the Therapist Bill stated that they counsel all manner of people; they do not discriminate. It is only when the goals of the therapy conflict with their values that they seek to refer. [Hearing Transcript, pgs. 73-89, 259, 264-266, 270-71]. Further, the sponsors of the Bill indicated that their intention was to simply return the ACA Code of Ethics back to the way it was, and had been, for many years. [Hearing Transcript, pg. 155].

Plaintiff tries to make much hay out of the citizen proponents of the Therapist Bill, particularly Family Action Council Tennessee (FACT) and the Alliance Defending Freedom (ADF). [See, Complaint, ECF 2, ¶¶ 22-28]. All that Plaintiff says about these organizations is that they "promoted" the Therapist Bill. But looking at the legislative history, ADF never makes an appearance. [ciDavid Fowler, the president of FACT, did come to testify about the Therapist Bill, but he was just one of many who testified in favor of the Bill. *Id.* There were also people who testified against the Bill. *Id.* All sides were heard. Plus, while courts may look into comments that a sponsor makes, "ultimately it is the purpose of the government decision-makers that is most important." *ACLU*, 591 F.3d at 850. The legislative history shows that the greatest consideration of

---

6 In 2014, after *Ward*, the ACA Code changed to preclude referrals. [Hearing Transcript, pg. 2-3; 2015 ACA Code

15

the legislators and of Governor Haslam was the well-being of the patients. Everyone wanted to ensure that a patient got the best therapist for the goal of the therapy; there was a consensus that a therapist whose core values conflicted with the goal of the therapy was not the best fit and might even be harmful.

There is nothing to suggest that the actual purpose was to approve or disapprove of religion, even though part of the reasoning was to protect First Amendment free exercise of religion. In doing so, the legislators did not indicate any approval of religion (or disapproval)—they just acknowledged that the right to free exercise was as a right that they were supposed to protect. The first prong of the analysis is satisfied.

### B.     There is no Endorsement of Religion.

The second prong requires the Court to determine whether the principal or primary effect of the statute either advances or inhibits religion. *Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971); *Chaudhuri*, 130 F.3d at 237. This prong requires the Court to consider the reactions of a reasonable observer; if a reasonable observer would conclude that the message the government communicated is one of approval or disapproval of religion, then the statute is invalid. *Lemon*; *Chaudhuri*; *Smith,* 788 F.3d at 590. The reasonable observer must be assumed to be aware of the history and the context of the statute. *Smith*, 788 F.3d at 590. The reasonable observer must be assumed to be aware of the legislative history and text of the statute. *Id.*

But "a law is not unconstitutional simply because it *allows* churches to advance religion, which is their very purpose. For a law to have forbidden 'effects' under *Lemon*, it must be fair to say that the *government itself* has advanced religion through its own activities and influence." *Amos*, 483

---

of Ethics.]

U.S. at 337 (emphasis in original).

Here, a reasonable observer with knowledge of the reasons for the Therapist Bill and who is familiar with the legislative history, would not think that the primary effect is to aid religion. It is clear from the hearings that the major considerations at all times were the health and well-being of patients. There was a concern that therapists cannot shelve their values and thus a therapist whose core values conflict with the goals of a patient's therapy could, and most likely would be, detrimental to the patient. There was a consensus that therapists whose values are more in line with their patients' goals could be more effective counselors (and Plaintiff agrees). Certainly, that would necessarily include religious counselors and their values, but it would also include those who are not religious and their values (Plaintiff agrees that non-religious persons have core values or sincerely held beliefs). Plus, it is important to bear in mind that the _only_ part of the new 2014 ACA Code of Ethics that was affected was the part about referrals – the non-discrimination clause and the clause prohibiting imposition of values – remain intact. There can be no discrimination as to the person. The legislators were only attempting to revert to the old ACA Code of Ethics, which had been in place for many years without incident.

Further, even as to the nod to religion, all that occurred was that the legislators allowed private religious counselors to exercise their Free Exercise and Free Speech rights, whatever those might be; the Therapist Statute does not sponsor, finance, or aid any religion. The Supreme Court has found that such allowance for Free Exercise and Free Speech rights is not an unconstitutional endorsement of religion. *See, Amos*, *supra; Cutter, supra*. The statute does not apply to government providers. *See* Tenn. Code Ann. § 63-22-301.

Moreover, Plaintiff is not a "reasonable observer." Plaintiff is not familiar with the

17

legislative history – he did not go to the hearings, did not read the transcripts, did not read any letters from any proponents of the Therapist Bill, and did not ask to testify. [Bleu Copas Deposition, pgs. 80-81, 114, 115, 122, 123-124, 127, 128]. Plaintiff is not familiar with the Therapist Bill and how it works – that it only affects part A.11.b of the Code, and does not affect C.5, the non-discrimination part. Plaintiff's entire basis for this lawsuit is based on his subjective perception of the law and how it works. [Bleu Copas Deposition, pgs. 115, 122, 123-124, 127, 128]. Plaintiff thus has no proof that the primary effect is to endorse religion.

The Therapist Statute does not improperly endorse religion.

### C.         The Statute Actually Avoids Entanglement with Religion.

The Sixth Circuit recognizes that a plaintiff has a high bar to meet in order to prevail on the third prong, excessive entanglement. *Granzeir*, 173 F.3d at 574 (citing to *Agostini v. Felton*, 521 U.S. 203, 232-36 (1997)). In determining whether there is excessive entanglement, courts look to these factors: (1) the character and purposes of the institutions that are benefited; (2) the nature of the aid that the State provides; and (3) the resulting relationship between the State and the religious authority. *Agostini*, 521 U.S. at 232; *Smith*, 788 F.3d at 593; *Steele v. Indus. Dev. Bd. Of Metro Gov't Nashville*, 301 F.3d 401, 425 (6th Cir. 2002).

Here, the institutions that are benefited are <u>*all*</u> private practice therapists, regardless of their religious (or non-religious) leaning. Because of the Therapist Bill, the therapist can rest easy knowing that he cannot be disciplined if he refers a patient whose goals of therapy conflict with his core values. Again, the point of the Therapist Statute was to return the ACA Code back to what it provided prior to the 2014 change, *not* to endorse any discrimination. It does not apply to counselors outside of the private practice setting. Tenn. Code Ann. § 63-22-301.

Second, there was and is no financial aid or support; there is nothing in the Therapist Bill that defines what "sincerely held beliefs" are supposed to be; and there is nothing in the Therapist Bill that provides any relief to religious groups. It is a facially neutral statute that applies to all private practice therapists.

Finally, there is no resulting relationship between the State and a religious authority. In fact, without the Therapist Bill, there is a risk of significant entanglement with religion. Without the statute, there is a risk that patients will complain about referrals from therapists, some or all of whom may be faith-based counselors. The result would then be that the Department of Mental Health would be fielding these complaints and dealing with, among others, faith-based counselors. In addition, there would likely be lawsuits from faith-based and other therapists complaining that the new ACA Code (which the State adopted) violates their Free Exercise and Free Speech rights. Others may file suit claiming there is a violation of Title VII. The Therapist Bill avoids all of that. There is no excessive entanglement.

For the reasons stated, Plaintiff fails to establish an Establishment Clause violation. The Therapist Bill meets each prong of the modified *Lemon v. Kurtzman* test. Judgment should be granted to Defendant.

II.     **Plaintiff Speculates that a Therapist Might Possibly Discriminate Against Him;this is Not Sufficient for Standing.**

Federal courts are limited to the jurisdiction prescribed by Article III of the United States Constitution. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016). Article III limits the jurisdiction of federal courts to "cases" or "controversies." U.S. Const. art. 3, § 2. The "case and controversy" requirement "is not satisfied, and a court therefore has no jurisdiction, when

19

the claimant lacks standing." *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009) (quotation omitted). Therefore, "[s]tanding is the threshold question in every federal case." *Id.* (citation omitted).

A plaintiff has the burden to establish standing. *Soehnlen*, 844 F.3d at 581. Three elements must be shown: (1) an injury in-fact, (a) which is concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; (2) an injury "fairly traceable to the challenged action of the defendant;" and (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-62 (1991); *Soehnlen*, 844 F.3d at 581. *Id.* Plaintiff's claim fails on all three factors.

In its Memorandum and Order (ECF 21), this Court found based on the pleadings that Plaintiff had standing. Defendant, and thus the Court, focused on the concreteness and particularized requirements of standing. (Mem. and Order, ECF 21, PageID # 192-200.) Now after discovery, taking all facts into consideration, it is clear that Plaintiff cannot establish standing. In particular, Plaintiff cannot establish elements (1)(b), (2), and (3) above, in other words: (A) that his injury is actual and imminent; (B) that his injury is fairly traceable to Defendant; and (C) that his injury is likely to be redressed by a favorable decision.

A.     <u>**Plaintiff's Injury is Only Hypothetical, Not Actual and Imminent.**</u>

"Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly impending*." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013) (quoting *Defenders of Wildlife*, 504 U.S. at 565, n.2). The United States Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute an injury

in fact," and that 'allegations of *possible* future injury' are not sufficient.'" *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *see also Defenders of Wildlife*, 504 U.S. at 565, n.2; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, (2006); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 190 (2000); *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).)

In *Clapper,* 568 U.S. at 401-02, the Court held that the respondents lacked standing and concluded that the "theory of *future* injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Id.* at 401. The Court stated, "We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* at 414. *See also*, *Morrison v. Board of Educ. Of Boyd County*, 521 F.3d 602, 607-08 (6th Cir. 2008). In *Morrison*, 521 F.3d at 607-08, a student believed that he could not speak out against homosexuals because the school had a policy disallowing stigmatizing speech. The student feared that he would be punished if he did so. *Id.* But there was no "specific action by the Board—that were he to speak, punishment would result." *Id.* at 610. The Sixth Circuit found there was no standing. "To avoid conferring standing by way of guesswork, we require that a litigant demonstrate either a concrete harm or the threat of such harm." *Id.* at 608. Where a Plaintiff's standing is based on "subjective perceptions, beliefs and misapprehensions," there is no standing. *Id.*

Here, Plaintiff's standing arguments are based on nothing more than "subjective perceptions, beliefs and misapprehensions." Plaintiff acknowledges that he has not made any real effort to find a therapist for the past three years. Plaintiff has not looked on or for any websites, including the website for the Tennessee Equality Project; Plaintiff has not sought recommendations from any of

21

his trusted therapists or psychiatrists, or from anyone at all. [Bleu Copas Deposition, 43-44, 46-52, 53-57, 73-74, Exhibits 1-4]. There are a number of reasons why Plaintiff has not sought a therapist–many of which are unrelated to the passage of the Therapist Bill: (1) Plaintiff does not want to do the hard work that it takes to start a new therapist relationship; (2) Plaintiff is not confident in the program that the VA uses to send people to outside treatment; (3) Plaintiff does not want to seek treatment or request recommendations because there is a "stigma" attached to seeking help; (4) plaintiff has always been reticent about seeking treatment; (5) Plaintiff has always been afraid of discrimination – he spends "every moment" of his life thinking that he will be discriminated against; and (6) Plaintiff has internalized homophobia that causes him to believe that everyone else feels the same way. [Bleu Copas Deposition, pgs. 15-16, 25-26, 27, 43-44, 46, 57-60, 69-70, 73-74, 77, 88-89, 139-141].

True, in his deposition, Plaintiff occasionally would pay lip-service to the idea that a therapist *might* discriminate against him, but he really does not know whether that will happen. Plaintiff, who himself is in the mental health field, does not know of *anyone* who has been discriminated against after the Therapist Bill was passed. [Bleu Copas Deposition, pg. 77]. Plaintiff's fear that he might be discriminated against is not sufficient to confer standing. *See, Morrison*.

Further, Plaintiff bases his entire claim here on *his perception* of how the law works, the reasons for the law, and the basis for the law. [Bleu Copas Deposition, pgs. 115, 122, 123-124, 127, 128]. Plaintiff did not attend any hearings, did not read the hearing transcripts, did not read the letters from the proponents of the Therapist Bill, and does not know whether any of the Therapist Bill promoters discussed any anti-homosexual beliefs with any lobbyists or other legislators. Importantly, Plaintiff is concerned about potential discrimination because he believes that the non-

discrimination part of the code of ethics – part C.5 – was affected by the Therapist Bill. [Complaint, ¶ 3]. That is simply not true; part C.5 remains intact – it is only the referral part of the code, A.11.b – that was affected. [Hearing Transcript, pg. 233-234, 337, 340-341]. Further, all the therapists who testified made it clear that they do not discriminate against the *person* – they just want to make sure that, if a goal of therapy violates a sincerely held belief, that they can refer the patient to a therapist who is more empathetic with the goal. Each testified that they believed this to be the best result for everyone, particularly including the patient.[7]

Thus, Plaintiff's entire case is built on subjective perceptions, beliefs, and misapprehensions, which is not a proper basis for standing.

**B.**   **Plaintiff Cannot Show that his Alleged Injury is Fairly Traceable to any Action by the State.**

In order to establish causation, a plaintiff must demonstrate some threatened or actual injury resulting from the allegedly illegal action, and not "injury that results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976); *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 (2013)( "We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.") Here again, the record shows that the part of the ACA code of ethics that bars discrimination is still intact after the passage of the Therapist Bill. [Hearing Transcript, pg. 233-234, 337, 340-341]; see also Tenn. Code Ann. § 63-22-110(b)(3). Thus, at least as far as the State, there was an intent to *prevent* discrimination. Further, the Therapist Bill only applies to private

---

[7] Even Plaintiff agrees with this – that it is best for someone to get treatment from a therapist who is empathetic to the goal of the client. [Bleu Copas Deposition, pg. 100].

providers; it does not apply to State counselors. Thus, if there is in fact any discrimination,[8] that would be from a third party who is not before the court – i.e. any therapist who Plaintiff might see. Plaintiff thus cannot show causation. *Simon,* 426 U.S. at 41-43; *Clapper*, 568 U.S. at 414.

C.   **Plaintiff Cannot be Assured that a Favorable Decision Will Redress His Issues Because the 2014 Code of Ethics, Which Remains Intact Except for A.11.b, Allows, and Even Requires, Referrals Based on Other Reasons.**

Plaintiff is under the mistaken impression that, if part A.11.b of the 2014 Code of Ethics is to be re-instated, then no therapist will be able to refer based on some disagreement of the gay lifestyle. In fact, part A.11.a, Competence Within Termination and Referral, states:

> If counselors lack the competence to be of professional assistance to clients, they avoid entering or continuing counseling relationships. Counselors are knowledgeable about culturally and clinically appropriate referral resources and suggest those alternatives. If clients decline the suggested referrals, counselors discontinue the relationship.

[2014 ACA Code of Ethics]. In addition, counselors are only allowed to practice within the "boundaries of their competence." [2014 ACA Code of Ethics, Part C.2.a]. Counselors can also refer clients if the clients cannot afford the counselor's fees. [2014 ACA Code of Ethics, Part A.10.c]. Thus, counselors who disagree with the gay lifestyle and are asked to provide therapy to a person whose goals of therapy are to affirm the gay lifestyle, can still refer if they reasonably believe that they cannot provide competent service to the client.[9] It is important to note that, even after the Therapist Bill, discrimination against the person is not permitted – Part C.5 of the ACA Code

---

[8] Which is itself highly speculative.

[9] It is important to distinguish between "competence" and core conflict. As Dr. Berry has testified, a therapist who has a core value conflict could still be competent to render assistance to the client. [Dale Berry Deposition, pgs. 26-28]. The issue is that the therapist would not be able to mask his or her core values, which could be very confusing for the client, and thus referral is best for the client and the therapist. [*Id.*; Hearing Transcript, pgs. 261-263].

24

remains intact. And, the therapists who testified, including the Christian faith-based counselors, testified that they do treat all kinds of people without regard to skin color or sexual orientation, just not for goals of therapy that conflict with their values. These therapists believe that it is best for someone who can be more empathetic and affirming to treat the client for that goal of therapy.

Plaintiff cannot prove that he has standing to maintain this case.

## **CONCLUSION**

Based on the foregoing, there are no issues of material fact and Defendant is entitled to judgment as a matter of law.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

S/Dawn Jordan
DAWN JORDAN, BPR 20383
STEPHANIE BERGMEYER, BPR 27096
Office of Tennessee Attorney General
Civil Justice Section
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 532-2500

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing Defendants' Memorandum in Support of Motion for Summary Judgment has been filed electronically and may be accessed through the Court's electronic filing system. The following will receive a copy through the Court's electronic filing system:

Keith Edmiston
Edmiston Birdwell
7031 Middlebrook Pike
Knoxville, TN 37909

Christopher W. Cardwell
Mary Taylor Gallagher
Gullett, Sanford, Robinson & Martin
150 Third Avenue South, Suite 1700
Nashville, TN 37201

on this 15th day of May 2019.

S/Stephanie Bergmeyer

26